UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TERRILL CURTIS,<br><br>     Petitioner,<br><br>v.<br><br>CONNIE HORTON,<br><br>     Respondent. | Case No. 18-13438<br><br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS [1]**

In 2016, a Michigan jury convicted Terrill Curtis of shooting Dajuan Allen. Curtis was sentenced to up to 35 years in prison for, among other things, assault with intent to commit murder. Curtis unsuccessfully appealed his convictions to the Michigan Court of Appeals. The Michigan Supreme Court did not grant Curtis leave for further appeal.

Curtis now turns to federal court, asking for a writ of habeas corpus. Having reviewed the pleadings and the state-court record, the Court denies the petition.

## I. Background

The following facts as recited by the Michigan Court of Appeals are presumed correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

> On June 11, 2014, Dajuan Allen was shot in Detroit. According to Allen, he went to a convenience store on Whittier, left the store, and ultimately stopped on Beaconsfield. A person came out from behind a building with

a gun, said "what's up now," and shot him in the abdomen. Allen ran back to the store, asked others to call for help, and waited for an ambulance.

Detroit Police Officers Irvan Higgins and Robert Roby, Jr. responded to the call and went to the store. According to the officers, they asked Allen who shot him, and Allen answered, "Ray Ray." But Allen gave multiple, conflicting statements about whether he identified a shooter while at the store, testifying that he could tell police who shot him, that he did not answer police questions about the shooter's identity, and that he could not remember if he identified the shooter.

According to Allen, he was hospitalized after the shooting, and police officers came to speak to him. The officers showed Allen a photograph. Allen said it depicted Ray Ray or "Raymond" Curtis. Allen explained that he knew Ray Ray most of his life. At trial, Allen identified Curtis, whose first name is Terrill, as the shooter. Detroit Police Sergeant Matthew Fulks testified that Curtis had a tattoo of the words "Ray Ray" on his hands, and Curtis showed his tattoos to the jury.

The jury found Curtis guilty[.]

*People v. Curtis*, No. 330139, 2017 WL 1367182, at *1 (Mich. Ct. App. Apr. 13, 2017).

Curtis appealed. *Id.* He argued that the trial court (1) denied him his right to a fair trial by excluding three pieces of evidence, (2) violated his right to due process by allowing prosecutorial misconduct, and (3) violated his right to due process by using a single-photograph identification procedure. *Id* at *1–*6. The Michigan Court of Appeals affirmed his convictions, *id.* at *6, and the Michigan Supreme Court denied Curtis' leave to appeal, *People v. Curtis*, 901 N.W.2d 110 (Mich. 2017).

Curtis then filed this habeas petition, raising the same claims that were denied by the Michigan Court of Appeals. (ECF No. 1, PageID.29–42.) The Warden filed an answer, arguing that all of Curtis' arguments were either procedurally defaulted or lacked merit. (ECF No. 9.) Curtis did not reply.

2

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). So to obtain relief in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). But if the state courts did not adjudicate a claim "on the merits," "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III. Analysis

The Court will take each of Curtis' three arguments in turn.

### A. Exclusion of Evidence

Curtis argues that he was denied a fair trial by the trial court's exclusion of three pieces of evidence: an aerial map of the crime scene, photographs of the crime scene, and certain social media posts. (ECF No. 1, PageID.29–36.)

"With regard to evidentiary rulings, the standard for habeas relief is not easily met." *Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017). Federal habeas courts review state court evidentiary decisions "only for consistency with due process."

3

*Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (citing *Patterson v. New York*, 432 U.S. 197, 202 (1977)). Accordingly, if a ruling is so egregious that it "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Importantly, however, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). In other words, states have wide latitude with regard to evidentiary matters under the Due Process Clause. *Id.* None of the challenged evidentiary rulings meet this rigid standard.

### 1. Aerial Map

First, Curtis challenges the trial court's exclusion of an aerial map of the crime scene, which his counsel had used on cross-examination of the victim, Dajuan Allen, during the preliminary examination. (*See* ECF No. 10-4, PageID.189–190.) The Court of Appeals explained the background of this claim:

> At the May 28, 2015 preliminary examination, Curtis admitted an aerial map of the area surrounding the shooting, asked Allen to mark the location of the store, asked Allen to mark the location of the shooting, and asked Allen to draw a line connecting the locations.
>
> At trial, Curtis sought to admit a marked aerial map. Allen confirmed that it was the same map but twice stated that he did not know if the markings were the ones he had made. The trial court did not allow Curtis to admit the map as an exhibit or use it for an impeachment, reasoning that Allen "cannot identify that that is the document' from the preliminary examination, 'testified very clearly that he doesn't recognize it,' and 'said something about the dots and the lines aren't his."

4

*Curtis*, 2017 WL 1367182, at *2 (paragraphing altered).

The Michigan Court of Appeals addressed this claim on direct review and found that the trial court had not abused its discretion when it excluded the map for lack of authentication. *Curtis*, 2017 WL 1367182, at *2. Applying Michigan Rule of Evidence 901(A), the court explained that there was "no evidence" that the map was what defense counsel purported it to be because Allen could not determine whether the marks on the proposed exhibit were the same as the marks he previously made. *Id.*

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. "State . . . Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules." *United States v. Scheffer*, 523 U.S. 303, 309 (1998). Here, the state court's exclusion of the evidence was a reasonable exercise of its discretion in applying the Michigan Rules of Evidence regarding the authentication of documents. (ECF No. 10-10, PageID.487 ("The Court: 'He can't identify those markings. He specifically said he doesn't know if those were the markings that he made earlier.'").) And the exclusion of the map was not so egregious that it "result[ed] in a denial of fundamental fairness" because, even without this evidence, defense counsel was permitted to ask Allen to re-mark a "clean copy" of the map and to highlight inconsistencies between Allen's preliminary examination and trial testimony. (ECF No. 10-10, PageID.487–493); *Bugh*, 329 F.3d at 512. So this claim does not entitle Curtis to habeas relief.

5

### 2. Crime Scene Photographs

Curtis also challenges the trial court's ruling excluding crime scene photographs taken by defense counsel and his investigator. (ECF No. 10-11, PageID.633.) Again, the Michigan Court of Appeals explained the background for this claim:

> On the third day of trial, defense counsel notified the trial court of his intent to admit photographs that he took while an "investigator was present" that he claimed depicted "the scene at Beaconsfield." It is unclear when defense counsel took the photographs, but he admitted that it "would be impossible to say" that the photos accurately depicted the scene in June 2014. Defense counsel explained that he was unable to print the photos until the evening of the second day of trial, was unable to admit the photographs through witnesses offered on the third day of trial, and, therefore, he would need to call his investigator or "recall" an earlier witness to admit the photos. The prosecution objected to offering the exhibits, claiming that "they don't accurately depict the area back in 2014" and lacked "foundation."
>
> The trial court excluded the evidence for two reasons: (1) defense counsel had "adequate opportunity to show those photographs" to witnesses on the morning of the third day of trial, and (2) "there's no way to properly authenticate and identify them as accurately representing the topography of Beaconsfield and Whittier back in June of 2014."

*Curtis*, 2017 WL 1367182, at *2 (paragraphing altered).

The Michigan Court of Appeals held that the photographs could have been properly authenticated, but it did not specifically decide the question whether the photographs were improperly excluded. *Curtis*, 2017 WL 1367182 at *2. Instead, the state court held that "[e]ven if the trial court abused its discretion in concluding that Curtis could not authenticate the photos or lay adequate foundation, Curtis abandoned any argument that this error would have affected the outcome of the trial and required reversal." *Id.* at *3. And the state appellate court noted that Curtis

6

"failed to articulate how evidence that the shooting occurred on Beaconsfield would alter Allen's testimony that Curtis was the shooter or undermine any of the other elements required to sustain his convictions." *Id.*

The Warden argues that the Court of Appeal's finding that Curtis abandoned this claim under state law means that it has been procedurally defaulted. (ECF No. 9, PageID.83–84.) The United States Supreme Court has explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *See Wainwright v. Sykes*, 433 U.S. 72, 85–87 (1977). The last explained state-court judgment should be used to make this determination. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–05 (1991). If the last state-court judgment is silent or an unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. So to determine whether Curtis procedurally defaulted this due process claim in state court, the Court must look to that decision and consider whether: "(1) the petitioner fail[ed] to comply with a state procedural rule; (2) the state courts enforce[d] the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." *See Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

The Court finds that Curtis has procedurally defaulted this claim. The Michigan Court of Appeals determined that "Curtis abandoned any argument that this error would have affected the outcome of the trial and required reversal. A party abandons an issue if he 'merely announce[s] his position and leave[s] it to this Court to discover and rationalize a basis for his claims.'" *Curtis*, 2017 WL 1367182 at *2. So the first two requirements are easily satisfied. *See Smith v. Wolfenbarger*, No. 2:11-CV-10031, 2012 WL 1957286, at *9 (E.D. Mich. May 31, 2012). And the third is satisfied as well because the Sixth Circuit has found that "Michigan's abandonment rule is an adequate and independent state-law basis for prohibiting federal review of a claim." *Theriot v. Vashaw*, 982 F.3d 999, 1005 (6th Cir. 2020) (citing *People v. Harris*, 680 N.W.2d 17, 21 (Mich. 2004)); *see also Smith*, 2012 WL 1957286, at *9 (collecting cases). And, finally, Curtis has not shown cause or prejudice for the default. In fact, because he did not file a reply, he never argued for either.

And Curtis cannot overcome the procedural default by showing that a fundamental miscarriage of justice has occurred. The miscarriage-of-justice exception requires a showing that a constitutional violation probably resulted in the conviction of a person who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 624 (1998). Because he never replied, Curtis has made no such showing. So Curtis' claim about the exclusion of the crime scene photographs is thus barred by procedural default and does not warrant habeas relief.

### 3. Social Media Posts

Curtis next argues that the trial court denied him a fair trial when it excluded Allen's social-media posts as a sanction for violating the court's reciprocal discovery order.[1] (ECF No. 1, PageID.32–33.) Curtis had hoped to use the posts to impeach Allen after he testified that he was sober on the day of the shooting. (ECF No. 1, PageID.35.)

The Michigan Court of Appeals again explained the source of this claim:

> At trial, defense counsel indicated that he wanted to refresh Allen's memory and recollection with photographs from the social media site Pinterest. The prosecution objected, arguing that it had not seen the documents and, therefore, use of the documents violated the trial court's reciprocal discovery order. The discovery order stated that Curtis was to provide a "description of and an opportunity to inspect any tangible physical evidence that [he] may introduce at trial" and "copies of any document, photograph, or other paper, or evidence . . . in some electronic form" pursuant to MCR 6.201. The trial court found that Curtis violated the order and did not allow him to use the social media documents.

*Curtis*, 2017 WL 1367182, at *3.

The Court of Appeals rejected this claim after considering both whether the posts should have actually been admitted into evidence and whether Curtis should have been allowed to use them to impeach Allen. The court first found that Curtis had waived any argument on appeal that the social media documents should have

---

[1] Curtis also argues that the trial court erred in excluding this evidence for lack of authentication. (ECF No. 1, PageID.35–36.) But the trial court did not exclude the posts on that basis, so the Court will not address that claim. (*See* ECF No. 10-10, PageID.442 (The Court: "So I'm prohibiting you from using [the social media posts] for the reasons that it violates the pretrial discovery and trial order. I am not—This ruling does not extend to whether or not these items can be even properly authenticated and whether they are even relevant.").)

been admitted "when defense counsel conceded that he 'wouldn't necessarily want to put [any posting] into evidence.'" *Id.* at *4.

Second, the Court of Appeals found that—to the extent the trial court might have erred by issuing an overly severe discovery sanction—Curtis had failed to preserve the argument about the posts' importance for impeachment. *Id.* at *4. And, reviewing the unpreserved argument for plain error, the court found that Curtis was not prejudiced by the inability to impeach Allen with the posts. *Id.* The court reasoned that Curtis' argument that the posts would have impeached Allen's testimony that he was sober on the day of the shooting would have failed because "nothing in the lower court record indicates that the social media evidence shows drug use on the day of the shooting. . . . Therefore, we conclude that Curtis did not suffer prejudice from exclusion of the evidence." *Id.*

The Warden says that both of these arguments have been procedurally defaulted, but the Court agrees only as to the first. (*See* ECF No. 9, PageID.99.) Recall that to determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: "(1) the petitioner fail[ed] to comply with a state procedural rule; (2) the state courts enforce[d] the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." *Guilmette*, 624 F.3d at 290.

Curtis procedurally defaulted his argument that the posts should have been admitted into evidence. Curtis' counsel waived this argument when he said he

10

"wouldn't necessarily want to put [any posting] into evidence." *Curtis*, 2017 WL 1367182, at *4. And the Court of Appeals clearly relied on the state's waiver rule in denying relief. *Id.* Third, "waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors." *Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) (citing *People v. Carter*, 612 N.W.2d 144 (Mich. 2000)). And, again, Curtis makes no argument that the procedural default should be excused. So Curtis' claim based on the exclusion of the social media posts is barred by procedural default and does not warrant habeas relief.

But the issue of whether Curtis procedurally defaulted the argument that he should have been permitted to use the posts to impeach Allen at trial is a bit more complicated. To operate as a bar to habeas review, a state procedural rule must be "clearly and expressly" invoked. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *see also Bowling v. Parker,* 344 F.3d 487, 498 (6th Cir. 2003) ("[T]here must be unambiguous state-court reliance on a procedural default for it to block our review."). While the Court of Appeals found that Curtis failed to preserve the argument on appeal and reviewed the claim for plain error, it never explained what state procedural rule he failed to follow. *Curtis*, 2017 WL 1367182, at *4. So, arguably, this claim is not procedurally defaulted.

As such, the Court will consider the merits. And it will apply AEDPA deference because the Michigan Court of Appeals' review of this claim for plain error under *People v. Carines* is review "on the merits" under AEDPA. *Carines*, 597 N.W.2d 130, 138–39 (Mich. 1999); *see also Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) (noting that

11

the Michigan Supreme Court adopted the federal plain error standard articulated in *United States v. Olano*, 507 U.S. 725 (1993) in *People v. Carines*, 597 N.W.2d 130, 138–39 (Mich. 1999)); *Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("[I]f the state-law rule subsumes the federal standard—that is, if it is at least as protective as the federal standard—then the federal claim may be regarded as having been adjudicated on the merits.").

Given this standard, the Court finds that the Michigan Court of Appeal's conclusion was not contrary to or an unreasonable application of federal law. As the Michigan Court of Appeals explained when applying plain-error review, Curtis was not prejudiced by the exclusion of the evidence because none of the posts showed Allen using drugs on the day of the shooting, limiting their relevance to impeaching Allen's testimony. (ECF No. 10-10, PageID.435–442.) And the exclusion of the posts is not so egregious that it would "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana*, 518 U.S. at 43. Even without admission of this evidence, defense counsel was permitted to ask Allen about his drug use and the reliability of his identification of Curtis as the shooter. (*See, e.g.,* ECF No. 10-10, PageID.477, 498.) Because there is no support for Curtis' claims that his right to present a defense was unconstitutionally limited, the decision of the Court of Appeals is reasonable, and Curtis is not entitled to relief on his claim.

In conclusion, none of Curtis' claims relating to the exclusion of evidence resulted in a denial of his right to due process, so none of those claims warrant habeas relief.

### B. Prosecutorial Misconduct

Curtis next argues that the prosecutor's misconduct violated his due process rights. Specifically, Curtis contends the prosecutor improperly denigrated defense counsel in her rebuttal argument by stating: "People always go around they dig up all kind of subterfuge to try to gear you off especially when the witness has been consistent." (ECF No. 10-11, PageID.678; ECF No. 1, PageID.37–39.)

The Michigan Court of Appeals found that Curtis failed to preserve this argument for appeal because his counsel did not contemporaneously object to the prosecutor's argument. (ECF No. 10-11, PageID.678); *Curtis*, 2017 WL 1367182, at *4. Reviewing the claim, the court found that allowing the statements was not plain error because they "directly responded to Curtis's arguments in closing and related to evidence presented at trial." *Curtis*, 2017 WL 1367182, at *5.

The Warden again argues that this claim has been procedurally defaulted. (ECF No. 9, PageID.110.) The Court agrees. Here, in dismissing Curtis' prosecutorial misconduct claim, the court relied upon a state procedural bar—Curtis' failure to make a contemporaneous objection to the statements—in denying relief. The failure to make a contemporaneous objection is a recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 597 N.W.2d 130, 138 (Mich. 1999); *Johnson v. Sherry*, 586 F.3d 439, 444

13

(6th Cir. 2009), *abrogated on other grounds by Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017); *see also Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). Moreover, a "state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010) (en banc).

And, again, Curtis has not overcome this procedural default either by showing cause and prejudice for the default or by showing a fundamental miscarriage of justice. *See Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc); *Schlup v. Delo,* 513 U.S. 298, 326–27 (1995). Indeed, because he did not file a reply, he never argued for either. And, in any case, these comments do not even approach the high standard for prosecutorial misconduct set by *Darden v. Wainwright*, 477 U.S. 168 (1986). In *Darden*, the prosecutor did not violate the defendant's due process rights despite calling him an "animal;" saying, "I wish I could see him sitting here with no face, blown away by a shotgun;" and asking the jury to "give [the defendant] death" because "[t]hat's the only way I know that he is not going to get out on the public." *Id.* at 180 nn.10–12. The much milder facts here also do not amount to a violation of Curtis' due process rights, let alone an unreasonable application of federal law under AEDPA. *See Trierweiler*, 867 F.3d at 639. So Curtis is not entitled to habeas relief on this claim.

**C. Photographic Identification**

Finally, Curtis argues that the pretrial identification procedure violated his right to due process. In short, he says that the single-photo lineup was impermissibly suggestive. (ECF No. 1, PageID.40–42.)

As with the prosecutorial misconduct claim, the Michigan Court of Appeals found that Curtis failed to preserve his claim because he did not make a contemporaneous objection in the trial court. *Curtis*, 2017 WL 1367182 at *5. And, upon reviewing this claim for plain error, the Michigan Court of Appeals found no due process violation because the photograph identification was used only to confirm the identity of "Ray, Ray" after Allen had already identified Ray Ray as the shooter. *Curtis*, 2017 WL 1367182, at *6. Therefore, the photographic identification was "used only to help confirm the identity of [a] person [Allen] had already identified. . . . In light of this evidence, we conclude that the trial court committed no clear or obvious due process violation." *Id.*

The Warden again argues that this claim has been procedurally defaulted. (*See* ECF No. 9, PageID.119.) The Court again agrees, and for the same reason as the prosecutorial-misconduct claim. Here, the Michigan Court of Appeals relied upon a state procedural bar—the failure to make a contemporaneous objection to the identification—in denying relief. And, again, the failure to make a contemporaneous objection is a recognized independent and adequate state law ground for refusing to review trial errors. *Sherry*, 586 F.3d at 444. Moreover, a state court does not waive a procedural default by conducting plain-error review. *Fleming*, 556 F.3d at 539. And,

15

again, Curtis has not overcome this procedural default by showing either cause and prejudice or a fundamental miscarriage of justice because he made no such argument. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc); *Schlup v. Delo,* 513 U.S. 298, 326–27 (1995).

## IV. Conclusion

In summary, the Court DENIES Curtis' petition for a writ of habeas corpus. (ECF No. 1.) A separate order on Curtis' certificate of appealability and a separate judgment will follow.

SO ORDERED.

Dated: March 17, 2022

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE